UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARVIN GRILL,

                              Plaintiff,              **REPORT AND**
                                                    **RECOMMENDATION**
                                                    CV 03-3512(DLI)(ARL)

      -against-

TRIANS PHOTO LAB INC. d/b/a TRI COLOR
IMAGING,

                              Defendant.
----------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Before the court, on referral from District Judge Irizarry, is the motion for summary judgment by the defendant, Trians Photo Lab Inc. d/b/a Tri Color Imaging ("Tri Color"). For the reasons set forth herein, the undersigned recommends that the defendant's motion for summary judgment be denied.

**BACKGROUND**

The plaintiff, Marvin Grill ("Grill"), was employed by the defendant Tri Color as its General Manager from January 7, 2001 to May 7, 2002. Def. 56.1 Statement at ¶¶ 17,55; Pl. 56.1 Counter-Statement at ¶ 3.[1] The complaint in this action, filed in July 2003, alleges that Grill was discriminated against on the basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* and New York Executive Law §§ 296 and 297.

---

[1]The facts set forth in the defendant's Rule 56.1 statement that are cited to by the court have not been denied by the plaintiff except where specified to be the defendant's contention. Although the plaintiff prepared a Rule 56.1 counter-statement, the court finds that for the most part his statements supplement the defendant's Rule 56.1 statements, rather than contradict them.

Specifically, Grill contends that he was terminated from Tri Color because he was 73.

Prior to being hired by the defendant Tri Color, Grill worked in the photography industry for approximately forty-two years. From 1956 to 1970, Grill worked as a Plant Manger for Foto Produx, a photography laboratory. *See* Grill Resume, annexed as Ex. 1 to Grill Aff. From 1970 to 1986, Grill was employed by Berkey Photo as its Plant Manager in charge of production. Def. 56.1 Statement at ¶ 2; Pl. 56.1 Counter-Statement at ¶2. In 1986, Grill left Berkey Photo to become the Division General Manager at Qualex, a Eastman Kodak company. *Id.* At Qualex, Grill oversaw planning, budget performance and skill training. *Id.* In 1997, Qualex was purchased by Berkey National Professional Imaging and Berkey hired Grill as its Vice-President. *Id.* Grill worked at Berkey National until 1998. *Id.*

On January 7, 2001, after being unemployed for two and a half years, Grill accepted a job with Tri Color. Def. 56.1 Statement at ¶3; Pl. Dep. at 25 annexed to Seltzer Decl. as Ex. F. Tri Color is a full service photography lab that processes film and provides professional photographic services for professional and amateur photographers. Def. 56.1 Statement at ¶4. Nick Melconian, who is in his sixties, founded Tri Color in 1973 and is currently its Chief Executive Officer. *Id.* at ¶7. Nick Melconian resides in Florida and has not taken an active role in the company since 1992. *Id.* at ¶9. Nick Melconian's two sons, Elcid Melconian and Eric Melconian, are Tri Color's President and Vice-President. *Id.* at ¶¶5, 6. When the decision was made to offer Grill a position at Tri Color, it was Elcid and Eric Melconian's belief that Grill would bring in a substantial amount of business because of his reputation in the industry. *Id.* at ¶14.

Grill worked at Tri Color for fourteen months and was paid $700 per week during most of

that time period. On March 7, 2002, Grill was notified by Nick Melconian that his hours were being reduced to two days a week. Def. 56.1 Statement at ¶ 38. Grill contends that he was not given a reason for the reduction in hours. Pl. 56.1 Counter-Statement at ¶ 39. Tri Color contends that the reason Grill's hours were reduced is because his sales diminished. Def. 56.1 Statement at 39. Four days later, Tri Color rehired Alan Melconian, Nick Melconian's nephew, who had left Tri Color in May 2000, as their Sales Manager. Def. 56.1 Statement at ¶43. Alan Melconian was 25 years old at the time he was hired. *Id.* at ¶44; Pl. 56.1 Counter-Statement at ¶ 44. Tri Color contends that the reason Alan was rehired was because it needed to address diminishing sales. Defs. 56.1 Statement at ¶50.

On May 7, 2002, Grill's employment with Tri Color was terminated without notice. *Id.* at ¶ 55; Pl. 56.1 Counter-Statement at ¶ 55. According to Grill, Elcid and Eric Melconian told him they could handle the work themselves. Grill Aff in Opp. at ¶ 89. The next day, Tri Color notified its customers that Alan Melconian had been appointed as the new General Manager. *Id.* at ¶ 93. Grill contends that he was fired because of his age and he was replaced by a younger man.

The defendant contends that the reason for Grill's termination was Grill's failure to satisfactorily perform his job responsibilities, specifically with respect to sales. Defs. Mem. of Law at 1. The defendants argue that, as Tri Color's General Manager, Grill was responsible for "overseeing the operation, communicating with existing accounts, setting up sales and marketing programs and pursuing new business." Def. 56.1 Statement at ¶ 18. Tri Color also asserts that Grill's "primary role was to be in charge of bringing in sales." *Id.* at ¶ 19.

Grill contends that sales were not his primary responsibility and that this argument is a

3

pretext for the discrimination. Pl. 56.1 Counter-Statement at ¶19. He argues that he was "responsible for overseeing company operations, improving communications between [Tri Color] and existing accounts, planning new marketing programs, attending monthly professional photography meetings, attending state conventions, visiting existing accounts and setting up appointments with potential new accounts." *Id.* at ¶ 20. Grill claims that Tri Color's alleged loss in sales is an effort to legitimize Tri Color's decision to file him and that his sales performance was never an issue during the term of his employment. *Id.* at ¶ 30.

## DISCUSSION

### A. Summary Judgment Standards

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 129 (2d Cir. 1996).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505,

522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

"[T]he summary judgment standard applies with equal force to discrimination cases as it does to other cases." *Faruq v. Wal-Mart Stores, Inc.,* 2006 U.S. Dist. LEXIS 4676, *12 (W.D.N.Y. Jan. 23, 2006). "The salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Ashton v. Pall Corp.*, 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999) (quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) (additional quotation marks omitted)). Thus, "[t]hough caution must be exercised in granting summary judgment where motive is genuinely in issue . . . [it] remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir. 1997) (internal citations omitted). With these standards in mind, the court addresses the plaintiff's claims.

**B.     The Plaintiff's Age Discrimination in Employment Act Claim**

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to discriminate against employees that are at least forty years of age, on the basis of age. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000); *see also* 29 U.S.C. § 623(a)(1). A plaintiff alleging disparate treatment based upon age must show that age actually motivated the employer's action, "[t]hat is, the plaintiff's age must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome.'" *Reeves*, 530 U.S. at 141(*quoting Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

To establish a *prima facie* ADEA claim, the plaintiff must show that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he experienced an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003); *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir. 2000); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 317 (2d Cir. 1999). Once the plaintiff has established the *prima facie* case, the burden of proof then shifts to the defendant to offer a non-discriminatory reason for the employment action. *See Terry*, 336 F.3d at 138 (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Once this nondiscriminatory reason is established, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the matter. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). Thereafter, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Terry*, 336 F.3d

at 138 (citing *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305 (2d. Cir. 1997)).

This final burden of showing pretext may be satisfied either by the introduction of additional evidence or by reliance on the evidence submitted in support of the *prima facie* case of discrimination combined with sufficient evidence to find that the employer's justification is false. *See Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. at 148. The court must examine the entire record to determine whether the plaintiff "could satisfy the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Schnabel v. Abramson,* 232 F.3d 83, 90-91 (2d Cir. 2000)(citing *Reeves*, 530 U.S. at 143). Guided by these standards, the court now turns to the substance of the plaintiff's claim.

### 1. The Plaintiff's *Prima Facie* Case

Grill has clearly established two of the four required elements of a *prima facie* case of age discrimination. He falls within the class of individuals protected by the ADEA and he experienced an adverse employment action. However, the defendant disputes the remaining two elements – that Grill was qualified for his position and that he was demoted under circumstances giving rise to an inference of discrimination.

The burden of the plaintiff to establish a *prima facie* discrimination case has been described as "de minimus." *Brennan,* 192 F.3d at 316-17(citing *Chambers v. TRM Copy Centers*, 43 F.3d 29, 37 (2d Cir. 1994); *see also Graham*, 230 F.3d at 38 (evidence required to satisfy *prima facie* case at summary judgment stage is "minimal"). Here, Grill has established that he was replaced by a younger individual, which the courts have treated as a "valuable indicator" of age discrimination. *See Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d at 317. Moreover, Grill contends that he was qualified to serve in the position from which he was

terminated. He argues in this regard that he had been employed in the photography industry for over forty years and had served in the position at Tri Color, without incident, for over a year prior to his termination.

Tri Color argues, nonetheless, that Grill was not qualified for the job. Specifically, Tri Color contends that Grill failed to satisfy Tri Color's "most important performance criteria - that he increase sales." Def. Mem at 4. Tri Color argues, in support of this contention, that sales in 2001 were nearly $230,000 lower than in 2000. Further, Tri Color contends that despite the fact that Grill was hired to increase sales and bring in business, he failed to solicit the customers of competing photography labs. Def. 56.1 at ¶¶ 33-37. Therefore, Tri Color contends that Grill has not satisfied his burden to establish a *prima facie* age discrimination case. The court disagrees.

Tri Color is correct that "a plaintiff complaining of discriminatory discharge shows "qualification" by demonstrating satisfactory job performance, in accordance with the particular employer's criteria for satisfactory performance." S*ee Thornley v. Penton Publ. Inc.,* 104 F.3d 29, 29 (2d Cir. 1997). However, Grill had to be made "aware of just what [Tri Color's] expectations were." *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985)(quoting *Kephart v. Inst. of Gas Tech.,* 630 F.2d 1217, 1223 (7th Cir. 1980). Here, there are genuine issues of material fact as to Grill's job criteria and whether Tri-Color's advised Grill of its expectations with respect to sales.

Although the defendants contend that increasing sales was Grill's most important job criteria, Grill has characterized his job responsibilities in an entirely different way. Grill contends that he was hired because he was a good manager and Nick was impressed with the way he had run Berkey. Grill admits that he did work on sales, but argues he was responsible for

8

overseeing company operations. Pl. 56.1 at ¶¶ 20-21. The testimony given by Nick Melconian at his deposition supports this view. Nick Melconian testified that he was unhappy with the way his sons were running the business and that "maybe [Grill would] be managing them, because he wasn't around at all." Nick Melconian Dep. at 58 annexed as Ex. G to Seltzer Decl. Moreover, although Eric Melconian testified that it was Grill's job to "maintain existing sales" and "bring in more sales," he acknowledges that Grill was never given a sales quota." Eric Melconian Dep. at 88-89, annexed as Ex. H to Seltzer Decl.

Even accepting for the purposes of this motion that sales performance was Tri Color's most essential job criteria, there is nothing in the record that establishes with certainty that the drop in sales was the result of Grill's ineptitude. Indeed, Tri Color acknowledges that during Grill's tenure with Tri Color, Alan Melconian was soliciting Tri Color's accounts. Defs. 56.1 Statement at ¶13. Similarly, although Tri Color vigorously contends that Grill failed to solicit accounts and that he eliminated the customers of Jil-Crest from his mass mailings, Tri Color admits that prior to hiring Grill, it agreed that Grill would not be required to solicit Jil-Crest accounts. Def. 56.1 at ¶¶ 33-37. Accordingly, the court finds that the defendant has not provided sufficient evidence to find that, as a matter of law, Grill lacked the qualifications for his position.

The court also holds that Grill has set forth sufficient issues of fact regarding an inference of discrimination. Grill was 73 at the time he was terminated and was replaced by a twenty-five year old man. While Tri Color disputes that Grill's age had anything to do with his termination, the fact-finding required to accept Tri Color's version of the events leading up to the termination is not an exercise that may be carried out in the context of a motion for summary judgment. In sum, the court holds that Grill has set forth sufficient facts to sustain the minimal burden of

stating a *prima facie* case of age discrimination.

### B. The Defendant's Legitimate Reason For its Actions

Having established a *prima facie* case of discrimination, the burden shifts to Tri Color to establish a legitimate, nondiscriminatory reason for Grill's discharge. *See Heyman v. Queens Vil. Comm. for Mental Health,* 198 F.3d 68, 72 (2d. Cir. 1999); *see also Reeves v. Sanderson Plumbing,* 530 U.S. at 148. As recited above, the explanation offered by Tri Color as the reason for having fired Grill is its drop in sales in 2001. Tri Color argues, in this regard, that during the "first and only full year of employment with Tricolor, the company's total gross sales decreased by nearly $230,000 in comparison with total gross sales in 2000." Def. 56.1 at ¶ 22. Tri Color contends that this drop in sales was caused, in large part, by the plaintiff's failure to solicit business from potential accounts. See Def. Mem at 6-8.

"Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case. Thus, 'the defendant need not persuade the court that it was actually motivated by the proffered reasons" in order to nullify the presumption and obligate the plaintiff to satisfy the burden. If the defendant articulates a non-discriminatory reason, 'the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.'" *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir. 1997)(internal citations omitted). The evidence submitted by Tri Color concerning its sales establishes for the purposes of this motion, a legitimate, non-discriminatory reason for Grill's termination. Thus, the burden shifts back to the plaintiff to show that the reason articulated was pretext for discrimination.

### C. The Plaintiff's Evidence of Pretext

To satisfy his burden of showing that the reason articulated for the termination was a

pretext for discrimination, Grill need not come forward with evidence in addition to that presented in support of his *prima facie* case. Instead, he may rely on his *prima facie* case "combined with sufficient evidence to find that the employer's asserted justification is false." *See Reeves*, 530 U.S. at 148. As permitted by *Reeves*, Grill relies primarily on the same evidence in support of his *prima facie* case and provides additional evidence to show pretext. He argues, in support of his *prima facie* case, that his managerial position was given to a younger individual and that his performance did not justify the termination. In support of his argument that Tri Color's justification is a pretext, he contends that Tri Color is skewing its sales figures and misrepresenting his duties in an effort to legitimize his termination.

Grill specifically contends that his sales performance was never an issue during the term of his employment and that the "failure to solicit" issue raised by Tri Color flies in the face of the parties' agreement regarding those accounts. Specifically, Grill has presented evidence that suggests alternative reasons for the drop in sales unrelated to Grill's performance. To begin with, Nick Melconian testified that in 2000, the year the plaintiff's performance is being measured against, Tri Color "did very well." Nick Melconian Dep. at 51, 58. Then, as Tri Color acknowledges, its only salesman left to work for another photography lab and was soliciting Tri Color's clients. Def. 56.1 at ¶ 13. In addition, Grill testified that the heaviest sales were always in the fourth quarter and that Tri Color's business that year was effected by the September 11th terrorist attack. Pl. 56.1 at ¶¶ 27, 99.

Grill also offers alternative explanations for why sales appear to have improved once he was fired. Tri Color has compared its sales figures during Grill's employment to the sales figures after his termination. However, even common sense dictates that sales may have improved

11

because Alan Melconian returned to Tri Color and brought certain accounts back with him. Interestingly, the defendants never affirmatively state that they fired Grill to make room for Alan, Nick's nephew. Instead, Tri Color insists that they fired Grill because of his sales performance. Although Tri Color does admit that they rehired Alan to address diminished sales and then replaced Grill with Alan because of his superior record as a sales manager, Tri Color never connects Grill's firing with Alan's rehiring.

As discussed above, there is also a significant disagreement between the parties as to Grill's job requirements. Grill argues that he was hired to oversee company operations, not solely as a salesman. Pl. 56.1 Counter-Statement at ¶¶ 20-21. He also contends that he was responsible for improving communications between [Tri Color] and its existing accounts, planning new marketing programs, attending monthly professional photography meetings, attending state conventions, visiting existing accounts and setting up appointments with potential new accounts. *Id.* at ¶19. Finally, there is also a disagreement as to who actually hired and who fired Grill. Thus, the court can not infer, as suggested by the defendant, that discrimination was not a factor in the decision to terminate Grill. *See Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 560 (2d Cir. 1997)(where hirer and firer are same individual and termination occurs in short time span, a strong inference exists that discrimination was not determining factor in termination).

The ultimate question for the court is whether, upon examination of the entire record, the plaintiff "could satisfy the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Schnabel v. Abramson,* 232 F.3d 83, 90-91 (2d Cir. 2000), quoting, *Reeves,* 120 S. Ct. at 2106. Here, there are issues of fact regarding the

reasons for Tri Color's actions, and based on those facts, Grill may be able to persuade a jury that the defendant discriminated against him. Accordingly, the court finds that for the purpose of this motion, Grill has met his burden to show that the reasons offered by Tri Color for his termination were a pretext.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that defendant's motion for summary judgment be denied.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days after being served with a copy of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      January 30, 2007

_____/s/_____
Arlene Rosario Lindsay
United States Magistrate Judge